UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JVIS-USA, LLC,

        Plaintiff,

v.

FEDEX TRADE NETWORKS
TRANSPORT & BROKERAGE, INC.,

        Defendant.

_____/

Case No. 2:25-cv-11314

HONORABLE STEPHEN J. MURPHY, III

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS OR TRANSFER [7]

JVIS is an automotive supplier that used FedEx to ship automotive parts from Asia to North America. When FedEx shipments arrived weeks late, JVIS allegedly suffered more than $1 million in damages. JVIS then sued FedEx in the Eastern District of Michigan. ECF No. 1. In response, FedEx moved to dismiss or, in the alternative, to transfer the case to the Southern District of New York. ECF No. 7. It pointed to a mandatory forum selection clause that required JVIS to file suit in the Southern District of New York. Because the Court agrees that there is a valid forum selection clause, it will grant the motion in part and transfer the case.

### FACTUAL BACKGROUND

On April 5, 2024, FedEx emailed to JVIS an offer to ship goods for the upcoming "ocean shipping season." ECF No. 7-1, PageID.59. The offer covered shipments from May 1, 2024 to April 30, 2025, and it included an attachment. *Id.* The attachment provided that "[a]ll quotations and any services provided by FedEx Trade

1

Networks are subject to the applicable FedEx Trade Networks Terms and Conditions in effect at the time the relevant service is rendered." *Id.* at PageID.63. It included a hyperlink to FedEx's terms and conditions. *Id.* The attachment also included the following language:

> **FOR OCEAN FREIGHT IMPORTED INTO AND EXPORTED FROM U.S. PORTS, THIS PROPOSAL IS AN OFFER TO YOU TO ENTER A U.S. FEDERAL MARITIME COMMISSION CONFIDENTIAL NVOCC NEGOTIATED RATE ARRANGEMENT ("NRA"). THE SHIPPER'S BOOKING OF CARGO AFTER RECEIVING THE TERMS OF THIS NRA OR NRA AMENDMENT CONSTITUTES ACCEPTANCE OF THE RATES AND TERMS OF THIS NRA OR NRA AMENDMENT. DURING THE TERM OF THIS NRA, TRANSPORTATION IS SUBJECT TO RULES, TERMS, APPLICABLE SURCHARGES, ASSESSORIAL CHARGES, AND/OR GRI'S PUBLISHED IN THE FEDEX TRADE NETWORKS' RULES TARIFF BY FEDEX TRADE NETWORK OR FEDEX TRADE NETWORKS' AGENT, UNLESS OTHERWISE SPECIFIED IN THIS NRA.**

*Id.* It also provided a hyperlink of where to access the rules tariff. *Id.* On May 8, 2024, the General Manager of Import Operations at JVIS responded to the April 5, 2024 email and said "SO, we would like to accept to accept [sic] these rates." *Id.* at PageID.60.

At the time the JVIS employee sent the email, the applicable terms and conditions included a forum selection clause that required JVIS to file suit in the Southern District of New York. ECF No. 10-1, PageID.322, 325. It provided:

> Any claim or dispute arising under this Bill of Lading shall be determined according to the laws of the United States. Actions against the Carrier may only be instituted in the United States District Court for the Southern District of New York. The laws of the United States shall apply to any dispute.

*Id.* at PageID.325. Soon thereafter, in June 2024, FedEx updated the relevant terms and conditions. *See* ECF No. 7-1, PageID.56 (noting the "June 2024 FedEx Logistics Ocean House Bill of Lading Terms and Conditions"). The language of the forum selection clause, however, remained the exact same:

> Any claim or dispute arising under this Bill of Lading shall be determined according to the laws of the United States. Actions against the Carrier may only be instituted in the United States District Court for the Southern District of New York. The laws of the United States shall apply to any dispute.

*See id.* at PageID.78. Months later, in "late 2024," JVIS used FedEx for five shipments. ECF No. 7-1, PageID.57. The terms and conditions were available through multiple URLs. *See id.* at PageID.57 (discussing availability at time of shipment); ECF No. 10-1, PageID.322 (discussing availability in May 2024). The terms and conditions were also repeated in each bill of lading. ECF No. 7-1, PageID.67, 70, 73, 78. After several shipments arrived late, JVIS filed suit in the Eastern District of Michigan. ECF No. 1.

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice," the Court may transfer a case "to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). To assess a motion to transfer under § 1404, courts generally look to several public and private interest factors. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). But courts take a different approach when the parties have agreed to a valid forum-selection clause. In that situation, the plaintiff's choice of forum gets no weight and courts "should not consider arguments about the parties'

3

private interests," apart from those surrounding the forum-selection clause, which "weigh entirely in favor of the preselected forum." *Id.* at 63–64. Thus, courts are limited to public-interest factors like "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 62 n.6 (quoting *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241, n.6 (1981)). Those factors, however, "will rarely defeat a transfer motion," so "the practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 64.

## DISCUSSION

Here, FedEx moved to dismiss or, alternatively, to transfer the case to the proper venue. ECF No. 7. To begin, the Court will explain why transfer is the more appropriate course of action. Then, it will analyze the case under 28 U.S.C. § 1404(a).

I.   <u>Transfer in Lieu of Dismissal</u>

When "a case is improperly filed in contravention of a forum selection clause, the Court has the discretion to either dismiss the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or to transfer the case in accordance with section 1404(a)." *Scepter, Inc. v. Nolan Transp. Grp., LLC*, 352 F. Supp. 3d 825, 830 (M.D. Tenn. 2018) (citing *Smith v. Aegon Cos. Pension Plan*, 769 F.3d 922, 934 (6th Cir. 2014)). Courts routinely exercise their discretion to transfer rather than dismiss. *See, e.g.*, *Courtelis v. Rosenberg*, No. 5:20-cv-220, 2022 WL 987941, at *6–7 (E.D. Ky. Mar. 31, 2022); *C&S Outdoor Power Equip., Inc. v. Odes Indus. LLC*, No. 1:19-cv-01029,

4

2019 WL 4197608, at *5 (W.D. Tenn. Sept. 4, 2019) ("The Court finds that transfer, as opposed to dismissal, is a more appropriate means of enforcing the forum-selection clause as it better honors the parties' intentions."). Transfer is generally "preferable to a dismissal because it avoids repetitive refiling and associated fees, avoids possible statute of limitations problems, and ensures that the plaintiff will get his or her day in court." *Courtelis*, 2022 WL 987941, at *5 (citation omitted). Because the Court finds the interests of justice favor transfer rather than dismissal, it will analyze the motion under § 1404.[1]

II.    Motion to Transfer

In assessing the motion to transfer, the Court starts with the parties' contract. The email attachment was an "**OFFER**" by FedEx to enter into a "**NEGOTIATED RATE ARRANGEMENT**." ECF No. 7-1, PageID.63. The language was conspicuously bolded and capitalized. One of the terms of the offer, incorporated through the links provided, was a forum selection clause for the Southern District of New York. *Id.* at PageID.57, 78. The offer also provided a specific means of acceptance: "**THE SHIPPER'S BOOKING OF CARGO**" constituted "**ACCEPTANCE OF THE RATES AND TERMS**." *Id.* at PageID.63; *cf.* Restatement (Second) of Conts. § 30(1) (discussing that an offeror may demand a particular form of acceptance). Again, the language was bolded and capitalized. Thus, when JVIS booked the five shipments at issue in late 2024, and therefore accepted

---

[1] In deciding a motion to transfer under § 1404, courts are not limited to the pleadings; they can consider undisputed facts outside the pleadings. *Price v. PBG Hourly Pension Plan*, 921 F. Supp. 2d 764, 772 (E.D. Mich. 2013).

FedEx's offer, it agreed to litigate in the Southern District of New York. *See id.* at PageID.57, 78. Because JVIS agreed to litigate in the Southern District of New York, the presence of a forum selection clause weighs "entirely in favor of [transfer]." *Atl. Marine*, 571 U.S. at 63–64.

The forum selection clause should not have been a surprise to JVIS. When JVIS's General Manager of Import Operations received the email offer from FedEx, she had to open an attachment to see the shipment rates and terms. *Id.* at PageID.61. Her response to the email suggests that, at a minimum, she examined the rates contained in the attachment. *See* ECF No. 7-1, PageID.60. Even assuming that nobody at JVIS read the rest of the offer or accessed the terms and conditions, *see* ECF No. 9-2, PageID.122, that does not save JVIS from enforcement of the terms of the agreement. *See* Restatement (Second) of Conts. § 157, cmt. b. ("Generally, one who assents to a writing is presumed to know its contents and cannot escape being bound by its terms merely by contending that he did not read them; his assent is deemed to cover unknown as well as known terms."). Still, JVIS advanced several arguments against FedEx's motion—some about contract formation, others about enforceability.

*First*, JVIS argued that it is unclear what set of terms and conditions applied to the shipments. ECF No. 9, PageID.93–95. The terms and conditions link lead to a webpage that included multiple different terms and conditions. ECF No. 9-2, PageID.123–124. And one set of "standard terms" had a forum selection clause that named Tennessee. *Id.* But that is clearly not the correct set of terms and conditions

for the transactions at issue. The relevant terms and conditions are the ones that apply to ocean shipments and are found under the header "Ocean House Bills of Lading" *Id.* at PageID.123.

It is undisputed that the contested shipments were ocean shipments. And ocean-specific terms naturally apply to ocean shipments. *Cf. Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) (noting that the specific governs the general). In addition, because the shipments came from Korea and Malaysia, the ocean-specific terms "[i]ssued by all other FedEx Logistics or FedEx Trade Networks offices" govern. ECF No. 9-2, PageID.123; *see also* ECF No. 7, PageID.45 (explaining which terms apply).[2] Thus, there is no ambiguity about what terms and conditions applied to the shipments.

That conclusion is bolstered by the bills of lading themselves. The same forum selection clause—mentioning the Southern District of New York—was in each bill of lading. ECF No. 7-1, PageID.67, 70, 73, 78. And bills of lading are evidence of the contract between JVIS and FedEx. *See Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 18–19 (2004) ("A bill of lading records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage.").

*Second*, JVIS argued that, when it shipped the parts in late 2024, it could not have agreed to the applicable terms and conditions because FedEx issued a new set

[2] Although the offer governed shipments from China, Korea, and Malaysia, ECF No. 7-1, PageID.62, the relevant shipments were from Malaysia and Korea—not China. *Id.* at PageID. 66, 69, 72, 75.

of terms and conditions one month *after* the May response email. The argument fails because the email attachment was clear that "[a]ll quotations and any services provided by FedEx Trade Networks are subject to the applicable FedEx Trade Networks Terms and Conditions *in effect at the time the relevant service is rendered.*" ECF No. 7-1, PageID.63 (emphasis added). The language contemplates that the terms can change. It also provided notice to JVIS when it accepted the offer that it could (and perhaps should) check the FedEx website prior to booking cargo.

What is more, and crucially, the attachment also provided that the negotiated rate arrangement was to be accepted by the "**BOOKING OF CARGO**." *Id.* JVIS booked the relevant cargo *after* June 2024, later that year. *See* ECF No. 1, PageID.9–10 (indicating that FedEx emailed JVIS estimated delivery dates for the cargo in November and December 2024); *id.* at PageID.14 (linking delivery estimates to booking by alleging that "FedEx induced JVIS to book the sea container shipments based on false arrival dates"). Because JVIS had to accept by booking cargo, the May 2024 email from JVIS to FedEx was not really an acceptance; JVIS actually accepted months later, once the new terms were already in effect.

In any event, the version in effect in May 2024 and the version in effect in late 2024 both had the exact same forum selection clause. *Compare* ECF No. 10-1, PageID.322, 325, *with* ECF No. 7-1, PageID.57, 78. Thus, whichever terms and conditions JVIS accepted, it would have to litigate in the Southern District of New York. Either way, the result is the same.

8

*Third*, JVIS argued that the acceptance of FedEx's offer was really a "limited acceptance." ECF No. 9, PageID.92 (emphasis omitted). After all, JVIS's response said, "SO, we would like to accept to accept [sic] these rates." ECF No. 7-1, PageID.60. JVIS did not provide any legal citation for its "limited acceptance" theory, and the Court doubts that it passes muster. In any event, however, the email response was not an acceptance for the reasons discussed above. JVIS accepted the offer when it booked the cargo shipments, months after the email.

*Fourth*, JVIS invoked several private and public interest factors. Although JVIS argued that some private interest factors (e.g., the location of the parties, witnesses, and documents) weigh in favor of transfer, ECF No. 9, PageID.108, the Court cannot consider those factors. *Atl. Marine*, 571 U.S. at 64. That leaves the public interest factors. Neither party advanced any serious argument about court congestion. And even assuming the value of a Michigan-based court deciding Michigan issues and (perhaps) applying Michigan law, the Court sees no "extraordinary circumstances" that "clearly disfavor a transfer." *Id.* at 52.

*Finally*, enforceability. "The party opposing the forum selection clause bears the burden of showing that the clause should not be enforced." *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009) (citing *Shell v. R.W. Sturge, Ltd.,* 55 F.3d 1227, 1229 (6th Cir. 1995)). Although JVIS argued that FedEx "wrongly obtained" the agreement, ECF No. 9, PageID.107, the Court sees no allegation of fraud or duress; no indication that adjudication in the Southern District of New York will be ineffective or unfair; and no inconvenience so serious as to be unjust. *See Wong*, 589

F.3d at 828 (6th Cir. 2009) (citing *Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 375 (6th Cir. 1999)). Accordingly, JVIS did not carry its burden to show that the clause should not be enforced.

For the foregoing reasons, the Court will transfer the case to the Southern District of New York.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the motion to dismiss or transfer [7] is **GRANTED IN PART AND DENIED IN PART**. The Clerk of Court shall **TRANSFER** the case to the Southern District of New York.

**SO ORDERED.**

<u>s/ Stephen J. Murphy, III</u>
STEPHEN J. MURPHY, III
United States District Judge

Dated: March 10, 2026